Case for argument, Heartland Alliance v. DHS Ms. Rodriguez Good morning, and may it please the Court. The Tier 3 bar is a matter of significant public concern. Human rights groups, mainstream media, and members of Congress have all expressed serious concerns about the potential for arbitrary application of the Tier 3 bar. And yet the government wants to keep the names of Tier 3 organizations a secret, and the District Court's ruling would enable them to do so by improperly expanding the scope of Exemption 7e under FOIA. But Exemption 7e does not apply to the names of Tier 3 organizations because, first and foremost, Your Honors, names are not guidelines under Exemption 7e. And the District Court was incorrect to find that the names of Tier 3 organizations are guidelines because immigration officers use them in future adjudications to determine a particular applicant's admissibility. And I'd like to focus on two reasons why that ruling was incorrect. First, the use of names from prior adjudications and future adjudications does not transform the names into guidelines because the names are merely reflective of the guidelines, not the guidelines themselves. Guidelines by their nature, Your Honors, should be uniform and able to be replicated in a number of circumstances, no matter which adjudicator is applying the guidelines, under what circumstances, or when. And so when the government says that they use the names as a guideline when they are determining a particular applicant's admissibility, what they're really saying is they are using the guidelines themselves. They are saying that they are using the names of a Tier 3 organization that has been determined in a prior adjudication as a shortcut or as a proxy for using the guidelines from scratch and coming up with the same result. Are you looking for some commonality in those that would be labeled, whatever you call it, a terrorist organization? Is that what you're saying by a series of names, many of which are published, I guess, or published somewhere? Yes, Your Honor. Is there something that's typical about all of those that would imply that this kind of organization is going to be a guideline? No, Your Honor. Actually, it's whether the circumstances in which the particular applicant had a membership or affiliation or involvement in that Tier 3 organization meets the criteria that is stated in statutory definitions for what a Tier 3 organization is. And so in a particular application, an adjudicator needs to look at the circumstances involving that organization and say, okay, this organization did X, Y, and Z, and therefore it is or is not a Tier 3 organization by virtue of applying the statutory definition and other guidelines that have been publicly available to the organization's characteristics as it is known. The government says as follows, the government's declarants demonstrate that disclosure of the requested names would allow aliens who are intent on circumventing the law to conceal or misrepresent ties that they have with Tier 3 terrorist organizations. So what is wrong with that argument? Well, first of all, it doesn't address the threshold question of whether these names are actually guidelines. The court needs to determine that. Yeah, I'm not asking you about that. I'm asking you whether this is a sensible argument that they're making.  Why not? The reason why it is not a sensible argument that the disclosure of Tier 3 names will necessarily lead to circumvention of the law, which is the standard under FOIA, is because there is no logical risk of circumvention by disclosure of the names. The only individuals that can circumvent the law, which to be clear is the INA, the Immigration Nationality Act, are knowing terrorists, because the only ones who can circumvent the law are those who are not entitled to an immigration benefit, but who would receive one. Did you say knowing or known? Knowing. So they've got to know they're a terrorist. Right. If you meet any of those definitions under a Tier 3 terrorist group, you know that you're picking up a gun, you know that as a result you are a terrorist. So they can't be surprised if I say, gee, I just thought we were just a nice group of people to meet together, and now we've been called a terrorist. I didn't know that. And that's one of the reasons to get off the hook, I think. That is true. There is an exemption under the Tier 3 bar for unknowing individuals who at the time of the actions did not know that the organization that they were involved in were engaged in the type of activities that would qualify them as a Tier 3 organization. That is correct, Your Honor. But I thought the government's concern was that an alien who belonged to one of these organizations, terrorist groups, but didn't know whether the government had identified it as a terrorist group, would love to know the name of whatever the government calls it so that he could then say he's not a part of that group, not a member of that group. That appears to be the government's argument, but it is unfounded, Your Honor, because at the time of application, one is presumed to have read the law, have read the particular definitions of a Tier 3 organization, and will know whether those definitions would apply to that particular individual's actions or affiliations in the past. And if they are deemed to have known that, they will lie. That is not a surprise. That should not be something startling. Yes, some applicants would lie. The question is whether disclosing the names of Tier 3 organizations will change the behavior of a knowing terrorist. And the answer to that is no. There is no logical reason to believe that someone who knows what they were involved in before would have disclosed that fact. But now, in the world where the names of Tier 3 organizations are disclosed, that they would have somehow hid it and then now disclosed it. That doesn't make any sense, Your Honor. And knowing terrorists will always try to keep that information from appearing on their application, whether it is the Tier 3 names are disclosed or not. And so there really is no change in behavior that could lead to circumvention. I don't really understand, Your Honor. I think the concern is that this alien is a member of an organization. He doesn't know whether it has been classified as a terrorist organization. If the name is public, he will focus his efforts to circumvent the law on denying any connection with that organization. It depends on what the connection is, right? So if the individual knew, obviously, that they were picking up a gun and creating bodily harm or property damage, that person knows at the time of application that they already are considered to be engaging in terroristic activity that would bar them under Tier 3. If that individual did not know that the organization that they had affiliation with was involved in violent activities, for example, and had no idea and had no reason to know, then at the time of application, that person can invoke the unknowing exemption that you mentioned, Judge. But he may not know that it has been identified as a terrorist group by the government. If the government reveals the name of it and that he's a member and accuses him of being a member, well, at least he knows the name and now he can try to argue that he's not a member. That's right. He could say, he could omit that information. If at the time, assuming under your hypothetical, that at the time of the actions, he really truly did not know, that he thought he was raising money, for example, for literacy for children in his area and had no idea that the organization that he was involved in also had these violent means. No, but that's not the case I'm worried about. The case I'm worried about is he knows he belonged to a terrorist organization, but he doesn't know whether the government has identified it as a terrorist organization. So in that case, he would lie anyway. What would make him put forth his... Of course he would lie, but he'll have information that will enable him to focus his lie. He'll know the name of the organization, he may know a lot about it and he'll try to give reasons why he is not part of that organization. He would still omit that information whether or not those names are... He would still what? He would still omit that information whether or not the name is disclosed now because he is presumed under the law to have known that the activities that he engaged in or she engaged in were actual terroristic activities. He will have known that by picking up a gun or picking up some sort of firearm. I don't know why you talk about picking up the gun. He may have done absolutely nothing. Then we're talking... I'm talking about... No, he may be a member of an organization that the government is interested in, but he doesn't know the government is interested in it and he can't get the name of it. He doesn't know what they're calling it and if he knows the name then he can plan his testimony or what have you in a way that distances him from the group. Your Honor, that hypothetical assumes that the individual has not read the definitions which this court has held are not ambiguous. Not ambiguous, you say? Not ambiguous. They might be broad but they are clear. We'll finish because I have a question. Finish your answer there. Under that circumstance, even if he hasn't picked up a gun, if he knows the organization's aims, their goals, and their activities, he is presumed to know that he has engaged in terrorist activities at the time of application even today where the names are not disclosed. Therefore, there is no logical belief that he would act any differently in trying to already circumvent the law today in a world tomorrow where the names are disclosed. There is no change because... You're missing the point that the revelation of the name gives him more information. And as I say, to aim his circumvention at some identified organization That's the government's whole argument. What's your concern? What's the abuse here? You think wholesale numbers of individuals are being not considered because they belong to a soccer club that the government thinks has been infiltrated? Is that your concern? There have been a number of cases in which there has been a long delay because individuals have been tagged as members of Tier 3 organizations but have been on a waiting list for the determination of their immigration benefits. So if they had knowledge of the organization, how would that speed things up? Well, in that circumstance, if they truly were an unknowing affiliate of a particular organization, they could help build their case from the outset to say, this is why I am claiming the unknowing exemption. This is why I didn't know this. But without even having this information out there, immigration applicants are in the dark, and they don't know why they are being tagged. How do we balance that against our deference to the executive in matters of national security? I appreciate what you're saying about delay, but there is a balance that has to be attended to here. And how wholesale do you think the possible abuse is here? Well, I think it's quite widespread, Your Honor, given the great national attention that it has received. With some justification, I assume you would accept. I mean, this whole analysis process has a legitimate basis, right? You just think it's an overreach on Tier 3. Yes, Your Honor. I mean, you're not challenging the structure, are you? That is not the subject of this lawsuit, no, of course. We're only trying to get under FOIA the names of Tier 3 organizations, which is not exempted under FOIA. And, Your Honor, that is the critical issue. The question of the breadth of the statutory interpretation is for another day, and it's for the legislature. But disclosure of the Tier 3 names would enable agency action to be brought under public scrutiny, and it would further the goals of FOIA of transparency to all citizens for its government's actions. Well, wait. What specifically does someone do with this information? Well, first of all, it furthers the aims of FOIA. It allows the public to see what the government is up to. Tier 1. To address Judge Flom's point, there are a lot of things the government has good reasons not to want the public to know about. And those are exempted under FOIA if the government can, in fact, meet its burden, which it is not here. I do see that I'm into my rebuttal time. I know. I still have this one question. Yes, Your Honor. I have a little bit different concern about the terrorists because there could be a counter-terrorist organization that also uses guns and has reasons to defeat them. And I have this kind of concern that, you know, just go to Syria. It's very blurry about who's on what side. I thought we had some on our side, but they seem to get blurry about who gets bombed, and they seem to be pretty indiscriminate. My concern is, let's just take, you know, the jihadists and whatever they affiliate with ISIS. I don't know. I have a lot of concern about Christian groups who are being slaughtered, and I don't know if there are any organizations that is, quote, violent in offsetting trying to fight. Is that anything? I want to ask the government the same thing. Is there anything in your focus about people like that? Well, certainly the concern is that the al- They would be violent, I suppose, in return whoever the violent people are. And under the definition as it is, they would be considered a Tier 3 terrorist, as are individuals who helped allied forces of the United States. They have been barred or at least been considered for the Tier 3 bar. So it is wide-ranging. So they are included. They are included. Even now. Even now.  Yes, Your Honor. That is true. All right. Thank you. Thank you. Okay. Thank you, Ms. Rodriguez. Mr. Frank? May it please the Court. As the Court is aware, there are two steps to this 7E test. One is whether these names are guidelines. The second is whether their disclosure would help circumvent the law. Let me jump right to what I think is probably the most difficult part of the government's case and not beat around the bush. Plaintiff asks, I think quite reasonably, whether these names, whether the names themselves are guidelines or whether there are guidelines and these names are merely the result of applying the guidelines. I think it's a fair question. And the answer to that is that the district court found, as a factual matter based upon the government's declarations, that immigration officers used the names of the Tier 3 organization as an indication or guideline in future adjudications to determine the applicant's admissibility to the United States. That's what the district court found based upon our declarations. And under one standard of review used by this court, we would say that that is not clearly erroneous. And I think it makes sense because what plaintiff is calling the guidelines is what we released to plaintiff in a very broad FOIA request. And in the interest of transparency, we released a whole set of criteria and so-called guidelines, and they're in the appendix at pages 98 following. But even plaintiffs themselves in their brief, they make it very clear and they insist that the reason that this court upheld the constitutionality of the statute is that the guidelines and what those terms mean are self-evident. And that's what they said about the so-called guidelines that we produced. They are self-evident. They are organizations that engage in terrorist activities such as funding and supporting terrorist activities, that sort of thing. What is not apparent, what is not evident as part of the guidelines, is precisely what plaintiff wants. That's why they're here in court today. If these names were so self-evident, if they were already public, as plaintiff says, they wouldn't be wasting our time seeking them in a FOIA case. What they want are the part of the guidelines, you might call them the answer that are contained in the guidelines, that are not public. And that's what they're seeking here. Well, I just want to interject a little bit with my question to her. When you look at a terrorist organization, is it their methods or their motive? Because I use the word counter-terror, where there's some pretty bad terrorist organizations, and there are, I don't want to mislabel it, the good guys, because I use the word Christian, because that's a whole group of people who are being tortured and killed. And there are terrorists doing it. And the question is, are the people fighting them with guns and whatever else they can get a hold of, do they come under the label of terrorists because of what they do rather than what their motive is? Your Honor is correct. It's what they do. In the statute, it clearly provides, and I would refer the court to the appendix at 93 and 97, which gives it a definition of terrorist activity, and to pages 91 through 148, which are these publicly released so-called guidelines. And it talks about people. This is all redacted, or at least half of it is. I don't know what that means. It talks about people. As plaintiffs say, the statute is self-evident. It talks about people who engage in terrorist activities. And it gives examples of people who aid and support the enemy by giving financial, monetary support, who use explosives. But who's the enemy? My concern. It would be the United States of America would be the enemy. And Your Honor is correct. I don't want to mince words here. It is a broad definition, and it might well cover groups that we are sympathetic to. But that would be ridiculous. That's ridiculous. The terrorists on our side who are fighting against ISIS or whatever, we treat them as terrorists? No, not necessarily. Well, of course not. Of course not. They're on our side. They're not terrorists. Absolutely. They are terrorists. Absolutely, Your Honor is correct. And there are. That's what Judge McManus says. Then I misunderstood. I'm sorry. Well, there are what? I beg your pardon? You're going to say there are what? There are exemptions, statutory exemptions, in the statute that exclude particular groups who might otherwise meet the definition, the strict definition of a tier 3 terrorist. But they're on our side. Is there a published list of that? Is there a published list of those organizations, those groups? Yes. There are. Yes. It's in the statute. There are organizations that it says these groups are not tier 3 terrorists, in the statute. Also, there are some groups that used to be. I mean, this is a fluid situation. It sure is. I mean, it changes all the time. And particularly in the Middle East, sometimes they're good guys and then they become bad guys and vice versa. And there are situations where groups were tier 3 terrorist organizations, but then they changed sides and they became our allies. They were taken off of that list. And it's a fluent situation. And that's part of the reason we don't want to give up that list because it is a changing situation and we don't want to keep the terrorists up to date. I think that the answer basically, and I want to emphasize it because I think it's the hard part. I'll admit, I think it's the hard part of our case. I think, as this court indicated, the second part about circumventing the law is just logical and it's well supported in our declarations. But this first part, I want to be clear, that the plaintiffs made a big deal, and I think it's a legitimate point in their brief, that there are no lists of these tier 3 terrorist organizations. So the plaintiffs would think it's as simple as the adjudicator sitting out there in Syria or Afghanistan or wherever they are, they're out in the country, is going to be talking to somebody and he's going to say, well, I'm a member of, or I've given money to X, and that the guy's going to look over here at the list and see if they're on the list. That's not how it works because it is such a fluid situation. So a logical question and one that we discussed a lot in preparing for this case is how can it be a guideline if there is no list? Well, I'll give you a couple of answers to that because I think it's the heart of this case. The heart of this case is what is a guideline? Well, it's one of the two. This is just words. My much more interesting question is what is the harm to the government if it discloses the names of these terrorist organizations? Well, right along the lines there of there is no list, but I can say with some confidence that if this court were to release the names of these Tier 3 terrorist organizations, there would be a list in a matter of days. Plaintiffs would compile a list for their clients. It would be on the Internet. Yeah, I know. Okay, so what's the harm from the list? I think it's only natural, and it's also spelled out in our declaration, that if people who are applying for admission to the United States were given a list of these organizations and were told, if you're associated... I'm not suggesting that plaintiffs would do this. This seems like a fine organization. But if they were told that if you're associated with any of these organizations, you're probably not going to get admitted to the United States of America. People are going to dissemble that. I think we don't need expert testimony. We don't need examples, although we have given examples in our declarations. It's just a matter of common sense. What do you mean by dissemble? The government would already have identified these people as members of these groups, wouldn't it have? Not necessarily. Otherwise, let them in, right? Not necessarily, Judge Posner, because here's the problem. The adjudicators learn about these groups primarily from the people, the applicants who are coming in. The applicants will say, I gave material support, or I helped, or I cooked for, or I did this to X militia. And that's where these adjudicators, for the most part, learn about these Tier 3 terrorist groups. I mean, the Tier 1s and 2s, as plaintiffs have pointed out, they're known, okay? I understand. But the Tier 3, they're not known. So the alien comes in and he tells the government what groups he supports or belongs to, what the government knows from its investigative activity. That's what the record in this case indicates. Both our declarants said that we learn primarily about the activities of these Tier 3 organizations from the voluntary admissions of applicants. Well, why do they do that? Well, that's a good question. And I tell you the reason that they do that. They do it, one, maybe a lot of them don't know what the consequences are going to be by stating that. They don't have lawyers, let's say. Or, two, there are exemptions, so that being honest in some way helps them. The worksheets that are in this record here, those are all exemption worksheets, and I would encourage the court to look at them because it says the name of the person. It's redacted, of course. It says their activities, which is not redacted. And then it has the name of the organization. And the adjudicator is then called upon to decide whether they are entitled to an exemption. Okay, so what you're saying is, which I'm sure there's some truth to it, is sometimes the alien figures out, well, they know what I belong to this, so I'll come clean and I'll say I used to be part of this group. Now I've seen the light. Okay, that I understand. But how does the disclosure of the names, public disclosure of all these organizations, how does that affect this process by which the alien admits his membership in one of these dubious groups? Well, as our declarant stated, and I think as Your Honor suggested, people would dissemble and would not admit, obviously, to an association with somebody who they know. But you just said they don't. You just said they often will tell the government, which doesn't say do you belong to X, Y, or Z. It will tell the government. The government asks, you know, what did you do in Iraq or what have you, and you'll say I was a member of Al-Qaeda, but I've changed my stripes since. Right. Well, in some cases they're- So how does giving the name to the public, how does that change the incentives of these people? Well, it depends. I mean, if they don't know that this was a terrorist organization, they might, you know, go in and tell the truth and argue that they didn't know and, therefore, they're entitled to an exemption. Or if they were operating in duress, that would also entitle them to an exemption. But they don't know, really, that they're going to get an exemption. So, really, the safest thing is just to stay away from admitting that you were working for Boko Haram or whatever. Those are the easy- Yes, Your Honor. You've already mentioned that. You said there's lots of Al-Qaeda, ISIS, Boko Haram. Those are people that-and I assume a lot more are published in whatever that list is. Correct. And as I go back to what I'm concerned about is somebody who is on our side, if we'll call it that, but they're fighters, and they do things. They bomb people. They do other things to try to beat the other side, and they would come under the label of a terrorist group, I think. Well, as I think I said, the government has made an effort, I mean Congress has made an effort specifically to exclude those people on our side. Okay. But they would be the kind that could come back and say, I'm a member of XYZ, that they were at least the good guys while I was fighting. Right. And would that be a mitigating thing that might let them in? Well, to answer your question directly and Judge Flan's question, which he asked plaintiff about what the concern is, that a person has a right to appeal these decisions. Okay. And plaintiff is incorrect in saying that this is some kind of secret society that the government is involved in and not telling anybody. If a person is declined an exemption, they can appeal that to the Board of Immigration Appeals and ultimately to the district court, and they can make their case that this group is mistakenly on this list, and they can make that argument. So it's not secret, and they do have due process rights. I would just like to conclude with... If it's not secret, why don't you list these organizations? Well, we release in a particular case, so we're talking hundreds. This would be a lot more than that. What would be the harm to the government if it published a list of, you know, 100 terrorist organizations? How would that affect the interviews, the processing of these? Well, again, I don't mean to be repetitious, Judge Posner, but I believe that it's spelled out in our declarations that people would dissemble, and I think in this... What are they dissembling? They would hide the facts. But you said that these aliens often, you know, come clean. Why would it make a difference whether they come clean with an organization that's been publicly identified or whether they come clean about an organization which they suspect the government knows about? Let me just be clear. Some come clean, but if there was a list out there that they saw beforehand, the question is would they still come clean, okay? Why not? Because they've been shown a list and they've been told that if they're associated with this list, they're not getting into the United States. Yes, I know, but if there's no list and yet they have incentives for some reason to disclose having belonged to a terrorist organization, then it's exactly the same result. Well, my time is up. I would like to make... I believe I've given the best answers I can here. Well, I don't think you've given any answer. Because you say on the one hand, the alien whose terrorist organization is not public, but he worries that, you know, CIA knows about it, he will disclose his membership in it often. And then you say, but if it's public, then he'll conceal his membership. I don't get it. Well, I would point out that in these... Two quick points, if I might. Sure. Plaintiffs have a solution to this and they have a congressional solution. Congress made the choice to disclose Tier 1 and 2. Congress specifically made the choice not to disclose the Tier 3 names and has repeatedly failed to amend the statute over the years not to include that. Plaintiffs can go to Congress and get Congress to change that. Mr. Frank, one of your declarants is Mr. Martz from the State Department. Yes, sir. So is there not possibly diplomatic aspects to this matter? I'm speaking about shared intelligence with other countries' agencies that speak to these issues. So you haven't said that, but it seems to me that's in our consideration of how much deference to give the executive that there may well be, not only in this fluid situation you describe, but aspects of relations with other countries. You're absolutely correct because in the appendix, A154, paragraph 10, I would like to point out that we're not just talking about admission to the United States. This affects removal proceedings. It affects visas, which Your Honor is talking about. People who are associated with these organizations cannot get visas, so it applies across the board. The final thing is, and I think it's just obvious, in these times when we are accepting a lot of refugees into this country, the last thing we want to do is, I mean, everybody's talking about tidying up our vetting procedures. The last thing we want to do is loosen our vetting procedures to allow people more easily to get into the country who don't belong here. Thank you. Okay, thank you, Mr. Frank. Ms. Rodriguez, do you have anything further? Yes, Your Honor. First of all, Your Honors, Tier 1 and Tier 2 are in fact public, but Congress has never said that Tier 3 should not be public. In fact, they have said the opposite through FOIA. FOIA has established that unless there is some other exemption that applies or unless Congress has said that some information should be classified or confidential, information is presumptively public. So I just wanted to correct that statement from the government's statement. Furthermore, the reason why there is a harm that's at issue here, a harm to the public interest, is because there is no check on what the government is up to. And Judge Mannion, this is where I think your concern stems from. We don't know which good guys are being swept up into this broad Tier 3 definition because it is in fact broad, and it would in fact include individuals who are fighting on our behalf. Have your experience encountered somebody like that? Yes, Your Honor. And in fact, I will direct you to our reply brief at pages 11 through 12 in which we indicate a number of examples where individuals who have been fighting on, quote, the good side, have now been held to be subject to the Tier 3 bar and then have to fight years and years and years. There's a very interesting Washington Post article about this exact issue in the record that discusses a five-plus-year delay while people are waiting for the Tier 3 bar exemptions to kick in. And the reason why we need this information exposed to the light of day is to allow what the government suggested that we do, petition Congress. We need to have sunlight and daylight on this issue so that we can know what the government is up to. Furthermore... Does there need to be amendment to the law? Perhaps it does, but this is the first step so that we can... Because I'd sure prefer that. Well, the NIJC would also prefer that as well, Your Honor, but this is the first step is to knowing what the government is up to. And the balance, Judge Posner, that you had asked about earlier has already been struck by FOIA. FOIA has stated that the government is only entitled to withhold it if it is in fact a guideline that would lead to the circumvention of the law. And for all the reasons we stated before, I do see that my time is up. This is not, in fact, a guideline because the names themselves are not guidelines, and there is no difference in this world versus the world where the names are disclosed in terms of circumvention risk. We ask that you reverse the district court's ruling. Thank you. Okay, thank you very much.